Case: 1:21-mj-00200
Assigned to: Judge Harvey, G. Michael
Assign Date: 2/4/2021
Description: COMPLAINT W/ARREST WARRANT

# AFFIDAVIT

I, Daniel Doyle, a Special Agent with the Federal Bureau of Investigation ("FBI"), being first duly sworn, hereby depose and state as follows:

1.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Titles 8, 18, 19, 21, 22 and 31 of the United States Code. I have been a Special Agent with the FBI since March 2018. I am currently assigned to the FBI's Washington Field Office ("WFO"). I have training in the preparation, presentation, and service of criminal complaints and arrest and search warrants, and have been involved in the investigation of numerous types of offenses, including firearms violations.

2.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agents, agencies, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.      Based on my training and experience, and the facts set forth in this affidavit, I submit that there is probable cause to believe that, on February 3, 2021, Darnell DYSON violated the laws of the United States, including, but not limited to, Possession or Receipt of A Firearm or Ammunition By A Prohibited Person, in violation of 18 U.S.C. § 922(g)(1).

4.      Under 18 U.S.C. § 922(g)(1): "It shall be unlawful for any person – (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any

firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

## FACTS ESTABLISHING PROBABLE CAUSE

5.      In October 2020, FBI WFO obtained information indicating that Darnell DYSON was actively seeking to obtain a firearm. Records checks revealed that in March 2002, DYSON was sentenced in the Superior Court of the District of Columbia, in Criminal Case No. 2001 FEL 001764,  for 1st Degree Sexual Abuse While Armed, in violation of D.C. Code §22-4102 (now D.C. Code §22-3002). He was sentenced to serve a sentence of imprisonment longer than one year. Because of this conviction, federal law prohibits DYSON from possessing a firearm. DYSON was released from federal prison on or about September 18, 2019. DYSON is currently residing in the District of Columbia and is under the supervision of the District of Columbia Court Services and Offender Supervision Agency ("DC CSOSA") until September 2024.

6.      In January 2021, DYSON met with an Undercover Employee ("UCE 1") and a cooperating defendant[1] at a hotel room in Oxon Hill, MD. This meeting was consensually recorded by concealed audio recording devices. The following partial summary of the meeting is derived from a debriefing of UCE 1 and your affiant's observations of the meeting, which was observed via a live monitoring technique. During the meeting, UCE 1 informed DYSON that UCE 1 knew DYSON was interested in acquiring a firearm. DYSON affirmed that he wanted a small handgun that he could keep in his pocket. UCE 1 showed DYSON an image of a .38 caliber revolver on UCE 1's phone. DYSON affirmed that the displayed firearm was what DYSON was interested in purchasing. DYSON and UCE 1 discussed an appropriate price for the firearm.

---

[1] The cooperating defendant has a pending federal case and is hoping to provide substantial assistance to the government before he is sentenced in his case.

7.      During this negotiation, DYSON briefly placed a phone call to an unidentified individual. UCE 1 could hear DYSON's side of this phone call. DYSON asked the unidentified individual if they still had the firearm they had previously offered to DYSON, and if so, how much the individual would charge DYSON to purchase it. The unidentified individual told DYSON that he no longer had the firearm, and DYSON ended the call. DYSON and UCE 1 agreed that DYSON could purchase .38 caliber revolver for approximately $450 USD. DYSON identified himself as "Moe" and provided a phone number of ***-***-2867 so that UCE 1 could contact DYSON to arrange for the purchase of the firearm. DYSON also indicated he was interested in drum style or extended magazines. DYSON claimed he knew unspecified people who may also be interested in purchasing items from UCE 1. DYSON also asked if UCE 1 could sell him a compact .45 caliber or .40 caliber firearm. UCE 1 agreed to check if UCE 1 could obtain a second firearm for DYSON.

8.      In late-January 2021, UCE 1 conducted a phone call with DYSON. This meeting was consensually recorded by concealed audio recording devices. The following partial summary of the call is derived from UCE 1's report and conversations with UCE 1. UCE 1 informed DYSON that UCE 1 could return to the Washington, DC area in early February with the item that DYSON had requested. Although a firearm was not explicitly mentioned during the conversation, UCE 1 understood the conversation to refer to a firearm. DYSON confirmed he would be available to meet with UCE 1 during that time. UCE 1 and DYSON agreed to re-contact one another closer to UCE 1's return to the Washington, DC area.

9.      During a subsequent late-January 2021 message exchange between Dyson and UCE 1, DYSON agreed to purchase the firearms for $1000 USD. DYSON agreed to meet UCE 1 in Washington, DC on Wednesday, February 3, 2021, to complete the purchase of the firearms.

10.     On February 3, 2020, DYSON met with UCE 1 in Washington, DC. DYSON informed UCE 1 that he had the $1000 USD to purchase the two firearms, but that DYSON wanted to complete the purchase using the Cash App. UCE 1 requested DYSON provide physical cash since UCE 1 did not have a Cash App account. DYSON agreed, but requested UCE 1 drive DYSON to an ATM so that DYSON could obtain the cash for the purchase. UCE 1 drove DYSON to a nearby CVS located in Colmar Manor, MD. DYSON departed the vehicle. When DYSON returned, he provided UCE 1 with $1000 to purchase two firearms. In exchange, UCE 1 provided DYSON with one .38 caliber Smith and Wesson SPL revolver, (serial number obscured), one .45 caliber Colt M1991A1 semi-automatic handgun (SN: CP12877), one empty .45 caliber magazine with 7 round capacity, and two empty .45 caliber  magazines with a 10 round capacity. For officer safety reasons, these firearms were surreptitiously rendered inert prior to the transaction. UCE 1 then drove DYSON back to his vehicle in Washington, DC, where DYSON remained in possession of the two firearms. Immediately after UCE 1 parked in the vicinity of DYSON's vehicle,  Special Agents from the FBI conducted a probable cause arrest of DYSON for a violation of 18 U.S.C. § 922(g)(1).

11.     There are no firearm or ammunition manufacturers in the District of Columbia. Smith and Wesson is an American firearms manufacturer located in Springfield, Massachusetts, and they manufacture their firearms in Massachusetts.  Colt is an American firearms manufacturer located in Hartford, Connecticut, and they manufacture their firearms in Connecticut. Therefore, the firearms DYSON purchased in this case have traveled in, and affect, interstate commerce.

12.     Based on the foregoing facts, I submit there is probable cause to believe that Darnell DYSON has violated the laws of the United States, including, but not limited to, Possession or

Receipt of A Firearm or Ammunition By A Prohibited Person, in violation of 18 U.S.C. § 922(g)(1).

_____

DANIEL DOYLE, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to and subscribed before me telephonically, pursuant to Rules 4.1 and 41(d)(3), Fed. R. Crim. P., this 4th day of February, 2021.

_____

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE